# 24-11-cv

## United States Court of Appeals

### FOR THE SECOND CIRCUIT

_____

JOANNA LAISCELL,

Plaintiff - Appellant,

– v. –

BOARD OF EDUCATION, CITY OF HARTFORD,

Defendant - Appellee,

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT, CASE 3:20-CV-01463(VLB)

## BRIEF FOR DEFENDANT - APPELLEE

PETER J. MURPHY
CHELSEA C. MCCALLUM
SHIPMAN & GOODWIN LLP
ONE CONSTITUTION PLAZA
HARTFORD, CT 06103
TEL: (860) 251-5000
PJMURPHY@GOODWIN.COM
CMCCALLUM@GOODWIN.COM
COUNSEL FOR THE
DEFENDANT - APPELLEE

# Table of Contents

COUNTERSTATEMENT OF THE ISSUES ............................................... 1

COUNTERSTATEMENT OF THE CASE .................................................. 1

I.      Hiring for the Chief Financial Officer Position. ............................ 2

II.     The Dependent Eligibility Verification Audit. ................................ 3

III.    The Board's Investigation Into Plaintiff's Conduct During the
        Audit. ................................................................................................ 4

IV.     Termination of Plaintiff's Employment ........................................... 6

V.      Procedural History. ......................................................................... 7

SUMMARY OF ARGUMENT .............................................................. 9

STANDARD OF REVIEW ................................................................... 10

ARGUMENT ....................................................................................... 11

I.      The District Court Properly Held That No Reasonable Jury Could
        Find That the Board's Reason for Terminating Plaintiff Was
        Pretextual and That the Board Was Instead Motivated by
        Retaliation. ..................................................................................... 11

        A.      Application of the McDonnel Douglas Burden-Shifting
                Framework to Title VII Retaliation Claims .......................... 11

        B.      Plaintiff Has Not Raised a Triable Issue of Fact as to
                Whether the Board's Citation to Her Fraudulent
                Maintenance of Her Ex-Husband on Her Healthcare Plan as
                an Example of Her Unprofessional Conduct Was Merely
                Pretext for Retaliation. .......................................................... 17

C.      Plaintiff Has Not Raised a Triable Issue of Fact as to
        Whether the Board's Citation of Her Failure to Backup
        Budget Files as an Example of Her Unprofessional Conduct
        Was Merely Pretext for Retaliation. ....................................... 23

D.      Plaintiff Has Not Raised a Triable Issue of Fact as to
        Whether the Board's Citation of Her Altering a
        Subordinate's Email as an Example of Her Unprofessional
        Conduct Was Merely Pretext for Retaliation......................... 28

CONCLUSION ........................................................................................ 31

CERTIFICATION OF COMPLIANCE...................................................... 33

CERTIFICATE OF SERVICE.................................................................... 33

# Table of Authorities

**Cases**                                                     **Page**

*Banks v. Gen. Motors, LLC*,
    81 F.4th 242 (2d Cir. 2023) .......................................................... 14

*Bart v. Golub Corp.*,
    96 F.4th 566 (2d Cir. 2024) .......................................................... 13

*Bentley v. AutoZoners, LLC*,
    935 F.3d 76 (2d Cir. 2019) ............................................................ 13

*Carter v. TD Bank, N.A.*,
    No. 23-950, 2024 WL 2828470 (2d Cir. June 4, 2024) .................. 13

*Debidat v. Marriott Int'l, Inc.*,
    580 F. Supp. 2d 300 (S.D.N.Y. 2008) ........................................... 21

*Delaney v. Bank of Am. Corp.*,
    766 F.3d 163 (2d Cir. 2014) .................................................... 15, 16

*El Sayed v. Hilton Hotels Corp.*,
    627 F.3d 931 (2d Cir. 2010) .......................................................... 13

*Fox v. Starbucks Corp.*,
    No. 21-2531, 2023 WL 407493 (2d Cir. Jan. 26, 2023) ................. 27

*Gonzalez v. City of New York*,
    845 F. App'x 11 (2d Cir. 2021) ..................................................... 13

*Goonewardena v. New York State Workers' Comp. Bd.*,
    788 F. App'x 779 (2d Cir. 2019) ................................................... 26

*Graham v. Long Island R.R.*,
    230 F.3d 34 (2d Cir. 2000) ............................................................ 19

*Howell v. Montefiore Med. Ctr.*,
    675 F. App'x 74 (2d Cir. 2017) ..................................................... 27

iv

*Jacobs v. New York City Dep't of Educ.,*
768 F. App'x 86 (2d Cir. 2019) ....................................................... 27

*Jeunes v. Potter,*
No. 3:08CV01218(HBF), 2009 WL 2883060 (D. Conn. Sept. 3,
2009), *aff'd,* 382 F. App'x 2 (2d Cir. 2010)...................................... 15

*Jones v. Target Corp.,*
792 F. App'x 54 (2d Cir. 2019) ....................................................... 16

*Jute v. Hamilton Sunstrand Corp.,*
420 F.3d 166 (2d Cir. 2005)............................................................ 12

*Kwan v. Andalex Grp. LLC,*
737 F.3d 834 (2d Cir. 2013)............................................................ 16

*Macoas Soto v. Core-Mark Int'l, Inc.,*
521 F.3d 837 (8th Cir. 2008) .......................................................... 15

*McDonnell Douglas Corp. v. Green,*
411 U.S. 792 (1973) ................................................................... 11, 24

*McGuinness v. Lincoln Hall,*
263 F.3d 49 (2d Cir. 2001).............................................................. 19

*McPherson v. New York City Dep't of Educ.,*
457 F.3d 211 (2d Cir. 2006)......................................... 14, 22, 24, 29

*Perez-Dickson v. Bridgeport Bd. of Educ.,*
860 F. App'x 753 (2d Cir. 2017) ..................................................... 21

*Ragin v. Riverbay Corp.,*
No. 20-2233-CV, 2021 WL 4057196 (2d Cir. Sept. 7, 2021) .......... 21

*Rasmy v. Marriott Int'l, Inc.,*
952 F.3d 379 (2d Cir. 2020)............................................................ 14

*Roge v. NYP Holdings, Inc.*,
    257 F.3d 164 (2d Cir. 2001) ........................................................... 15

*Shumway v. United Parcel Serv.*,
    118 F.3d 60 (2d Cir. 1997) ...................................................... 19, 20

*Univ. of Texas Sw. Med. Ctr. v. Nassar*,
    570 U.S. 338 (2013) .......................................................... 12, 13, 14

*United States Postal Service Bd. of Governors v. Aikens*,
    460 U.S. 711 (1983) ............................................................... 14, 24

*Vandenbroek v. PSEG Power, CT LLC*,
    356 F. App'x 457 (2d Cir. 2009) ...................................................... 21

*Wade v. New York City Dep't of Educ.*,
    667 F. App'x 311 (2d Cir. 2016) ...................................................... 27

*Ya-Chen Chen v. City Univ. of New York*,
    805 F.3d 59 (2d Cir. 2015) ............................................................ 11

**Statutes**                                                          **Page**

42 U.S.C. § 2000e-2 ........................................................................ 12

42 U.S.C. § 2000e-3 ........................................................................ 12

Conn. Gen. Stat. § 10-151 .............................................................. 18

**Other Authorities**                                                 **Page**

Fed. R. Civ. P. 56 ............................................................................ 11

## COUNTERSTATEMENT OF THE ISSUES

Did the District Court properly enter summary judgment on Plaintiff's retaliation claim in light of the overwhelming evidence that Defendant terminated her employment because of her unprofessional conduct and Plaintiff failed to present any evidence that the legitimate motivations for terminating her were pretextual?

## COUNTERSTATEMENT OF THE CASE

In accordance with D. Conn Local Rule 56, Defendant submitted a detailed Rule 56(a)(1) statement of material facts not in dispute, together with supporting exhibits and deposition transcripts. (JA-12 at ECF 83). Plaintiff filed a Rule 56(a)(2) reply. (JA-12 at ECF 87). Based on the parties' submissions, the District Court (Bryant, J.) set forth a lengthy and thorough recitation of the undisputed facts of the case. (SA-1-13). Defendant believes that the District Court's summary of the facts is accurate. In order to set its arguments in the proper context, however, Defendant sets forth a brief summary of the factual background below.

1

## I.    Hiring for the Chief Financial Officer Position.

Plaintiff, an African American female, began working for the Hartford Board of Education (the "Board") in 2003 and was promoted several times until she reached the role of Executive Director of Financial Management in 2013. (JA-276, ¶¶ 1-2). In her role as Executive Director of Financial Management, Plaintiff was an at-will employee. (JA-296, ¶ 71). In January 2018, when the Chief Financial Officer ("CFO") resigned, Plaintiff applied for the open CFO position and was selected as a finalist. (JA-277, ¶¶ 7-8). The finalists for the CFO position were interviewed using a uniform process that Plaintiff had participated in to receive her prior promotions, both as an applicant and as a panelist. (JA-281, ¶¶ 22-24). Based on this uniform process, Plaintiff ranked third of all finalists. (JA-279, ¶ 15; JA-280, ¶ 17). On April 3, 2018, the Board ultimately hired the individual who ranked first, a white male. (JA-281, ¶ 21). On April 30, 2018, Plaintiff filed a Commission on Human Rights and Opportunities ("CHRO") complaint, alleging that she was "not promoted because of [her] race, color and sex[.]" (JA-38-41).

## II. The Dependent Eligibility Verification Audit.

During the 2017-2018 school year, the Board hired an independent entity, Secova, Inc., to conduct a dependent eligibility verification audit (the "Audit"), which would identify ineligible dependents of employees who remained on the Board's healthcare plan. (JA-17, ¶ 18; JA-47 ¶ 18; JA-284, ¶ 30). The Audit applied to all Board employees, including Plaintiff, and was projected to save the Board hundreds of thousands of dollars. (JA-284, ¶¶ 32, 34; JA-185, ¶ 15). The Audit proved fruitful, resulting in the removal of several ineligible dependents, including Plaintiff's ex-husband. (JA-18, ¶ 33; JA-49, ¶ 33). The other individuals identified as having ineligible dependents on the Board's insurance plan were lower-level employees who were union members, in contrast to Plaintiff's executive, at-will employment status. (JA-296, ¶¶ 71-72).

For purposes of the Board's healthcare plan, ex-spouses are ineligible dependents. The Board requires that all employees remove former spouses from insurance coverage within thirty days of the effective date of the divorce. (JA-75, ¶ 26). This change must be effected by providing a form to human resources, but there is no record of

3

Plaintiff ever providing the appropriate forms to human resources. (JA-75, ¶¶ 27-28). Plaintiff divorced her then-husband, Michael Brown, in December 2014. (JA-288, ¶ 44). Each year, Plaintiff received a 1095-C form, which listed the dependents receiving the same insurance benefits as Plaintiff. (JA-170-71; JA-208, ¶ 27; JA-272-73, ¶¶ 13-14; JA-290, ¶¶ 51-52). Despite being listed on these forms, Plaintiff did not remove Mr. Brown from the Board's healthcare insurance plan until March 12, 2018. (JA-18, ¶ 30; JA-49, ¶ 30).

## III. The Board's Investigation Into Plaintiff's Conduct During the Audit.

Despite her role as Executive Director of Financial Management and the undisputed fact that the Audit was expected to save the Board significant funds, Plaintiff expressed her dissatisfaction regarding the necessity of the audit. (JA-207, ¶¶ 18-19). During the Audit, Plaintiff also removed a sentence from an email sent by John Griffin, the then-Executive Director of Risk Management, before forwarding his email to the Superintendent. (JA-287, ¶ 43). The sentence she removed from the email read: "Also, an estimated total of 320 dependents may be removed from the plan as a result of this audit." (JA-133-36). The removal of this

sentence from the email improperly minimized the importance of the Audit. (JA-186, ¶ 22).

On or about March 16, 2018, with an update dated March 19, 2018, Mr. Griffin sent a memorandum to the Board regarding Plaintiff's continued maintenance of her ex-husband on the Board's health insurance plan and her behavior during the Audit. (JA-224-26; JA-260-62; JA-291, ¶¶ 54-55).

On March 16, 2018, the Board placed Plaintiff on paid administrative leave so that it could conduct an investigation into her conduct. (JA-292, ¶ 59). The Board hired an independent investigator, Forensic Accounting Services ("FAS") to aid in its investigation and to audit the insurance claims incurred by Plaintiff's ex-husband. (JA-292, ¶ 60).

During Plaintiff's administrative leave, the Board also learned that Plaintiff improperly had maintained budget files outside the required shared drive. (JA-274, ¶ 22). When FAS attempted to meet with Plaintiff to discuss her budget files and identify any locations where they were saved, Plaintiff refused to answer any questions. (JA-179; JA-265, ¶ 9; JA-274, ¶¶ 22-24; JA-293, ¶¶ 61-62).

## IV. Termination of Plaintiff's Employment.

After receiving the report from FAS verifying the allegations regarding Plaintiff's improper conduct, the Board met with Plaintiff and her attorney for two pre-disciplinary meetings on June 1, 2018, and June 14, 2018. (JA-294, ¶ 67).

On July 12, 2018, the Board formally terminated Plaintiff's employment on the ground that Plaintiff's conduct was "unacceptable and wholly unprofessional[]" and was "particularly egregious given [her] stature and position held in the District as the Executive Director of Financial Management." (JA-190). The Board reiterated that, in her role, Plaintiff "received and [was] aware of very specific information related to the dependent audit and used [her] position to minimize the importance of the audit." (*Id.*). The Board cited three examples of this unprofessional conduct: (1) Plaintiff's fraudulent maintenance of her ex-husband as a dependent from December 15, 2014, through March 12, 2018, wherein Hartford Public Schools incurred $6,691 of expenses relating to claims filed by her ex-husband during that time period; (2) Plaintiff's removal of a sentence from a subordinate's email, thereby minimizing the importance of the Audit; and (3) Plaintiff's failure to

properly store budget files, thereby demonstrating poor judgment. (JA-189-90).

On August 24, 2018, Plaintiff filed a CHRO complaint alleging that her termination was a result of retaliation for having filed the April 30, 2018, CHRO complaint. (JA-25-37).

## V. Procedural History.

On September 26, 2020, Plaintiff commenced the lawsuit underlying this appeal, alleging two counts: (1) discrimination "on the basis of her race, color, and sex in violation of 42 U.S.C. § 2000e-2(a)(1)[]" for failing to promote her to CFO, and (2) retaliation for filing her April 30, 2018, CHRO complaint in violation of 42 U.S.C. § 2000e-3(a). (JA-2 at ECF 1; JA-22-23). On January 12, 2021, Defendant answered the Complaint. (JA-2 at ECF 14). On August 24, 2022, after the close of discovery, Plaintiff filed a motion to amend the complaint. (JA-9 at ECF 55) On September 14, 2022, Defendant objected to Plaintiff's motion to amend the complaint, (JA-9 at ECF 61), and on November 30, 2022, the District Court denied Plaintiff's motion to amend the complaint without prejudice. (JA-9 at ECF 65). On December 7, 2022, Plaintiff renewed her motion to amend the complaint (JA-10 at

7

ECF 66), seeking to add several allegations and "ten counts under 42
U.S.C. §§ 1981, 1983, 1985 and 1986, as well as common law torts[,]"
including that her termination also "constituted discrimination on the
basis of her race, color and sex." (SA-12-13). Defendant objected to the
Plaintiff's renewed motion to amend the complaint on December 14,
2022, (JA-10 at ECF No. 68), and on December 23, 2022, the District
Court denied Plaintiff's renewed motion to amend the complaint (JA-10
at ECF 69). Plaintiff moved for reconsideration of this denial, (JA-10 at
ECF 70), amended her motion for reconsideration (JA-10 at ECF 73),
and on January 18, 2023, the District Court denied Plaintiff's motion
and amended motion for reconsideration. (JA-10 at ECF 76).

On March 3, 2023, Defendant moved for summary judgment on
both of Plaintiff's claims. (JA-12 at ECF 82). On September 22, 2023,
the District Court granted Defendant's motion for summary judgment
in its entirety. (JA-12 at ECF 91). On October 10, 2023, Plaintiff moved
for reconsideration of the District Court's summary judgment decision
(JA-13 at ECF 95), which the District Court denied on December 5,
2023 (JA-13 at ECF 96). This appeal followed. (JA-13 at ECF 97). On
appeal, Plaintiff only seeks to reverse the District Court's grant of

summary judgment as to her claim that she was retaliated against for filing her April 30, 2018, CHRO complaint, in violation of 42 U.S.C. § 2000e-3(a). She does not appeal the District Court's grant of summary judgment as to her claim of discrimination in violation of 42 U.S.C. § 2000e-2(a)(1), or any of the underlying rulings on her motions to amend.

## SUMMARY OF ARGUMENT

The Board established in the District Court that it had by legitimate, non-discriminatory reasons for terminating Plaintiff's employment as Executive Director of Financial Management. These reasons were supported by testimony and documentary evidence, and the District Court properly concluded that Plaintiff has failed to establish that there is any question of material fact regarding whether these reasons were mere pretext for retaliation for her filing of a Commission on Human Rights Complaint, brought in connection with her earlier failure to be selected for a promotion.

Contrary to established precedent, Plaintiff seeks to invalidate the District Court's decision by arguing that there are material issues of fact regarding (1) whether she actually had engaged in the conduct underlying the Board's decision to terminate her, and (2) whether she

9

was subject to disparate treatment with respect to other employees who also failed to remove ineligible dependents from their insurance plans. These claims fail as a matter of law. The Court's inquiry is limited to whether Plaintiff's allegations of retaliation were the *but-for* cause of her termination. Put another way, the Court must only determine whether the Board had a good-faith belief that Plaintiff had engaged in this conduct and was motivated to terminate her because of this conduct. The evidence unequivocally demonstrates that the Board held this good-faith belief and was properly motivated. Plaintiff failed to present any evidence that, even in the light most favorable to her, could establish that the Board was motivated by retaliation to terminate her employment.

Because the evidence demonstrates that there is no issue of material fact regarding the motivations of the Board in terminating Plaintiff's employment, the District Court's ruling granting Defendant judgment as a matter of law should be affirmed.

## STANDARD OF REVIEW

This Court's review of a "district court's decision to grant summary judgment [is] *de novo*[,]" because such a motion may be

granted only when the moving party shows that there is no genuine dispute as to any material fact and is entitled to judgment as a matter of law. *Ya-Chen Chen v. City Univ. of New York*, 805 F.3d 59, 69 (2d Cir. 2015) (citation and quotation marks omitted); Fed. R. Civ. P. 56.

## ARGUMENT

## I. THE DISTRICT COURT PROPERLY HELD THAT NO REASONABLE JURY COULD FIND THAT THE BOARD'S REASON FOR TERMINATING PLAINTIFF WAS PREXETUAL AND THAT THE BOARD WAS INSTEAD MOTIVATED BY RETALIATION.

The issue presented on appeal is narrow: Plaintiff only asserts that the District Court erred by "concluding that a reasonable jury could not find that the Board's asserted reasons for terminating Laiscell were pretextual[,]" thereby asserting that the District Court erred only in its analysis of the third stage of the familiar *McDonnell Douglas* framework. Pl. Br. at 20.

### A. Application of the *McDonnell Douglas* Burden-Shifting Framework to Title VII Retaliation Claims.

Retaliation claims brought pursuant to Title VII of the Civil Rights Act, 42 U.S.C. § 2000e *et seq.* are analyzed using the well-established framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Chen*, 805 F.3d at 70 ("We analyze retaliation

11

claims using the burden-shifting framework from *McDonnell Douglas*[.]"). Under the *McDonnell Douglas* framework, "the plaintiff bears the initial burden to establish a prima facie case of retaliation[.]" *Id.* Once this burden is met, creating a "presumption of retaliation" the defendant must then "articulat[e] a legitimate, non-retaliatory reason for the adverse employment action." *Id.* (citation and quotation marks omitted). When defendants proffer such an explanation, "'the presumption of retaliation dissipates,' and the plaintiff must prove 'that the desire to retaliate was the but-for cause of the challenged employment action.'" *Id.* (quoting *Jute v. Hamilton Sundstrand Corp.*, 420 F.3d 166, 173 (2d Cir. 2005), then quoting *Univ. of Texas Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 339 (2013)).

Here, the inquiry is limited to the third stage[1] of the *McDonnell Douglas* burden-shifting framework, wherein Plaintiff "bears the

---

[1] The third stage is where the application of the *McDonnell Douglas* framework diverges for Title VIII disparate treatment and retaliation claims. Disparate treatment and retaliation claims, while both brought pursuant to Title VII, are two distinct categories of wrongful employer conduct. *Nassar*, 570 U.S. at 342 (distinguishing "status-based discrimination" claims brought pursuant to 42 U.S.C. § 2000e-2(a) from "employer retaliation" brought pursuant to 42 U.S.C. § 2000e-3(a)). At the third stage, which requires an inquiry into causation, disparate treatment, i.e., "status-based," claims are subject to a lessened

12

ultimate burden to show that the employer's proffered reason was merely a pretext for an unlawful motive." *Bentley v. AutoZoners, LLC*, 935 F.3d 76, 88–89 (2d Cir. 2019) (citation and quotation marks omitted). In order to demonstrate that the District Court improperly rendered summary judgment in favor of Defendant, Plaintiff "must come forward with some evidence of pretext in order to raise a triable issue of fact." *El Sayed v. Hilton Hotels Corp.*, 627 F.3d 931, 933 (2d Cir. 2010); *Gonzalez v. City of New York*, 845 F. App'x 11, 15 (2d Cir. 2021).

---

causation standard wherein the plaintiff "can prevail by proving that an impermissible factor was a *motivating factor*, without proving that the employer's proffered explanation was not some part of the employer's motivation." *Bart v. Golub Corp.*, 96 F.4th 566, 570 (2d Cir. 2024) (citation and quotation marks omitted). Under this standard, "a plaintiff may, but need not, show that the employer's stated reason was false, and merely a pretext for discrimination; a plaintiff may also satisfy this burden by producing other evidence indicating that the employer's adverse action was motivated at least in part by the plaintiff's membership in a protected class." *Id.* at 576. In retaliation claims brought pursuant to Title VII, however, a plaintiff must prove the heightened standard of "but-for" causation. *Nassar*, 570 U.S. at 362; *see also generally Carter v. TD Bank, N.A.*, No. 23-950, 2024 WL 2828470 (2d Cir. June 4, 2024) (applying the mixed motive test articulated in *Golub* to the discrimination claim but applying the heightened "but-for" causation standard to the retaliation claim). Because this appeal is limited to Plaintiff's Title VII retaliation claim, Plaintiff must meet her burden at the third stage under the heightened but-for causation standard.

At this stage, the Court's focus is "in what '*motivated* the employer[;]' the factual validity of the underlying imputation against the employee is not at issue." *McPherson v. New York City Dep't of Educ.*, 457 F.3d 211, 216 (2d Cir. 2006) (quoting *United States Postal Service Bd. of Governors v. Aikens,* 460 U.S. 711, 716 (1983)) (footnote omitted). Again, Plaintiff must establish that "her protected activity was a but-for cause of the alleged adverse action by the employer." *Nassar*, 570 U.S. at 362; *Banks v. Gen. Motors, LLC*, 81 F.4th 242, 275 (2d Cir. 2023) ("A plaintiff must show a connection between the protected activity and the adverse action, that is, that the retaliation was a 'but-for' cause of the employer's adverse action." (citation and quotation marks omitted)); *Rasmy v. Marriott Int'l, Inc.*, 952 F.3d 379, 391 (2d Cir. 2020) (the "but-for causation" rule is applicable "when a plaintiff is rebutting an employer's neutral reason for an adverse employment action[]"). Put another way, she must establish that the alleged "unlawful retaliation *would not have occurred* in the absence of the alleged wrongful action or actions of the employer." *Nassar*, 570 U.S. at 360 (emphasis added). The Court thus examines whether the employer had a good faith belief that the reasons for termination were

14

legitimate. *See Roge v. NYP Holdings, Inc.*, 257 F.3d 164, 169 (2d Cir. 2001) (affirming grant of summary judgment where the record was "clear that, at the time of [the employee's] termination, the [employer] believed" that the employee had committed fraud); *see also Jeunes v. Potter*, No. 3:08CV01218(HBF), 2009 WL 2883060, at *10 (D. Conn. Sept. 3, 2009), *aff'd,* 382 F. App'x 2 (2d Cir. 2010) ("'In determining whether a plaintiff has produced sufficient evidence of pretext, the key question is not whether the stated basis for termination actually occurred, but whether the defendant believed it to have occurred[.]'" (quoting *Macoas Soto v. Core-Mark Int'l, Inc.*, 521 F.3d 837, 842 (8th Cir. 2008)). It is well-established that the Court does "not sit as a super-personnel department that reexamines an entity's business decisions." *Delaney v. Bank of Am. Corp.*, 766 F.3d 163, 169 (2d Cir. 2014) (citation and quotation marks omitted).

In recognition of the fact that she cannot offer any evidence to demonstrate that her termination was motivated by the filing of her CHRO complaint, Plaintiff unsuccessfully attempts to prove pretext by sowing doubt in the legitimacy of the Board's reasons for terminating her. Her attempts to "'demonstrat[e] weaknesses, implausibilities,

15

inconsistencies, or contradictions in the [Board's] proffered legitimate, nonretaliatory reasons for its action[]'" are wholly unavailing. *Jones v. Target Corp.*, 792 F. App'x 54, 56 (2d Cir. 2019) (quoting *Kwan v. Andalex Grp. LLC*, 737 F.3d 834, 846 (2d Cir. 2013)) (emphasis added).

At the outset, Plaintiff makes a critical, glaring omission. She argues that the Board "asserted three reasons for its decision to terminate" her, then proceeds to offer argument as to each individual example of her unprofessional conduct that contributed to the Board's decision to terminate her at-will employment. Pl. Br. at 21. In reality, the letter terminating Plaintiff's employment cites these "three reasons" only as *examples* of her "fraudulent and unprofessional conduct," but ultimately concludes that the totality of her "unacceptable and wholly unprofessional[]" conduct *"is particularly egregious given [her] stature and position held in the District as the Executive Director of Financial Management*[,]" and was thus grounds for termination. (JA-331-32). Plaintiff's attempts to downplay her role as a high-level executive, and the impact that had on the Board's good-faith belief that her conduct warranted termination, should not be endorsed. *See Delaney*, 766 F.3d at 169 (The Court does "not sit as a super-personnel department that

16

reexamines an entity's business decisions." (citation and quotation marks omitted)).

Nonetheless, Defendant will address each of the examples of unprofessional conduct in turn, none of which is merely pretextual, as Plaintiff asserts.[2]

**B.    Plaintiff Has Not Raised a Triable Issue of Fact as to Whether the Board's Citation to Her Fraudulent Maintenance of Her Ex-Husband on Her Healthcare Plan as an Example of Her Unprofessional Conduct Was Merely Pretext for Retaliation.**

The first example of unprofessional conduct cited by the Board in the letter terminating Plaintiff's employment is her failure to remove her ex-husband as a dependent on her health insurance plan, despite the fact that he had become ineligible for benefits upon the finalization of their divorce several years earlier in December 2014. (JA-288, ¶¶ 44-45; JA-190). Plaintiff does not dispute that her husband remained on

---

[2] Plaintiff attempts to lessen her burden by asserting, without citation to any authority, that if there are "questions of fact as to whether any one of [the three examples of unprofessional conduct] is pretextual, this raises questions as [to] the overall decision-making process, rendering summary judgment inappropriate and warranting reversal." Pl. Br. at 32. This unsupported assertion warrants no consideration, however, because the totality of the record clearly demonstrates that the Board was properly motivated when it determined that Plaintiff was unfit for her position.

her healthcare plan until she removed him in March 2018, nor does she dispute that her ex-husband was not eligible for benefits. (JA-18, ¶ 30); *see also* Pl. Br. at 22-26. Rather, her argument relies almost entirely on the fact that there were other employees who had failed to remove ineligible dependents but who were not terminated based on their failure to do so.[3] Pl. Br. at 23-26. Thus, Plaintiff's argument rests entirely on the fact that the Audit identified other employees who were not terminated despite also having failed to remove ineligible dependents. This argument fails because, contrary to Plaintiff's assertion and consistent with the District Court's ruling, none of these employees were similarly situated to her.

---

[3] In fact, at least one other employee, a tenured teacher, resigned in light of allegations that she improperly had maintained an ineligible dependent on the Board's insurance plan. Plaintiff attempts to flag this teacher as a comparator, Pl. Br. at 18, but such attempts fall flat. Plaintiff fails to acknowledge the *significantly* different process entailed in terminating a tenured, unionized teacher versus an at-will employee. *See* Conn. Gen. Stat. § 10-151. Aside from the fact that, as discussed herein, Plaintiff was not similarly situated to this teacher and her claim otherwise fails as a matter of law, she cites only one piece of evidence— the date that the Board moved to terminate the tenured teacher, which was after Plaintiff's CHRO complaint—and asks the Court to make several inferential leaps to find that the Board only moved to terminate this teacher in light of Plaintiff's CHRO complaint. There simply is no evidence to support this assertion.

For an employee to be "similarly situated" to Plaintiff, Plaintiff must demonstrate that she and the individuals with whom she compares herself are "similarly situated in all material respects." *Shumway v. United Parcel Serv.*, 118 F.3d 60, 64 (2d Cir. 1997). "[T]he plaintiff must show that she share[s] sufficient employment characteristics with her comparator so that they [can] be considered similarly situated." *McGuinness v. Lincoln Hall*, 263 F.3d 49, 53 (2d Cir. 2001). There must be a "reasonably close resemblance of the facts and circumstances of the plaintiff's and the comparator's cases." *Graham v. Long Island R.R.*, 230 F.3d 34, 40 (2d Cir. 2000). Where Plaintiff and comparators are sufficiently distinct, Plaintiff is not similarly situated to the alleged comparators. *McGuinness*, 263 F.3d at 53.

Here, as the District Court properly concluded, Plaintiff failed to establish that there was any dispute of material fact regarding whether Plaintiff was similarly situated to the other employees who maintained ineligible dependents on their healthcare plans but were not terminated. The District Court soundly reasoned: "Indeed, it is undisputed that every other employee who improperly kept an ineligible

19

dependent on the employee health benefit plan had a lower-level position than Ms. Laiscell. … Considering the fact the audit was not intended to be punitive and in light of the reasoning proffered in the termination letter, … a reasonable jury would conclude it was precisely Ms. Laiscell's position in leadership that made her conduct worthy of termination." (SA-26).

Plaintiff asserts, without authority, that even though she "was a managerial employee in the finance department[,]" "a reasonable jury could find that this does not make her failure to have removed her ex-husband and causing $6,691 of unnecessary expenses any less severe than a tenured teacher or other employee's similar failure, particularly where such other employees caused far greater unnecessary expenses to the district." Pl. Br. at 20. Again, Plaintiff misapprehends the standard. She must establish that these other employees were "similarly situated in **all** material respects." *Shumway*, 118 F.3d at 64 (emphasis added). The undisputed fact that Plaintiff was an at-will executive (and not merely managerial, as Plaintiff states) and that the other employees were lower-level, union employees is more than sufficient to establish that Plaintiff was not similarly situated to these other employees in all

20

material respects, and thus that there is no triable issue of fact for the jury. *See*, *e.g.*, *Perez-Dickson v. Bridgeport Bd. of Educ.*, 860 F. App'x 753, 756 (2d Cir. 2017) (finding that the plaintiff was not similarly situated to the other employees, in part, because she was a principal and no other employees were*)*; *Ragin v. Riverbay Corp.*, No. 20-2233-CV, 2021 WL 4057196, at *3 (2d Cir. Sept. 7, 2021) (finding that plaintiff, the Director of Human Resources, was not similarly situated to other employees); *Debidat v. Marriott Int'l, Inc.*, 580 F. Supp. 2d 300, 308 (S.D.N.Y. 2008) (finding that union and non-union employees were not similarly situated); *Vandenbroek v. PSEG Power, CT LLC*, 356 F. App'x 457, 461 (2d Cir. 2009) (finding that employees were not similarly situated where one was rehired "with union support[]").

In any event, even if Plaintiff could establish that the other employees who held ineligible dependents on their healthcare plans were similarly situated to her, that would not change the result because Plaintiff was terminated for her overall misconduct, which demonstrated a lack of fitness for her executive position, not solely because she maintained an ineligible dependent on her healthcare plan.

Plaintiff next offers that "Laiscell also averred that she had previously sought to remove her ex-husband from the relevant insurance policy" and "a reasonable jury could also credit her account and hold her blameless for the continued presence of her ex-husband on her coverage." Pl. Br. at 26. As discussed extensively below, this is immaterial. *See infra* Section I.C. Again, what matters is only whether the Board had a good-faith belief that the conduct she had engaged in was grounds for termination; whether a jury could find that she was "blameless" for that conduct is immaterial. *See McPherson*, 457 F.3d at 216 ("[T]he factual validity of the underlying imputation against the employee is not at issue."). Moreover, Plaintiff's claim that she submitted the forms to remove her ex-husband from her insurance plan (which the Defendant disputes and Plaintiff has offered no evidence to support) does not help her cause; rather, it demonstrates that she knew he was ineligible for coverage and was aware of how to determine whether he was still on her insurance plan, but she later failed to ensure that he was removed. Her later claims that she was unaware that he had not been removed thus fall flat. The District Court expressly acknowledged that, Plaintiff, "as a professional skilled in

22

financial management, … knew or should have known that her health insurance coverage and premium, as reflected on her paystub or deposit notice, did not change in the years after her divorce[,]" and the language in the termination letter expressly supported this view. (SA-26).

Accordingly, the District Court properly concluded that Plaintiff had failed to raise a triable issue of fact regarding whether the Board had a good faith belief that she committed this misconduct, and that this reasoning was not pretextual. (SA-27 ("Absent evidence showing the Board did *not* have a good faith belief she committed misconduct, Ms. Laiscell fails to show the Board's decision was pretextual.")). Thus, Plaintiff's appeal must fail.

### C. Plaintiff Has Not Raised a Triable Issue of Fact as to Whether the Board's Citation of Her Failure to Backup Budget Files as an Example of Her Unprofessional Conduct Was Merely Pretext for Retaliation.

Regarding the second example of unprofessional conduct cited by the Board in the letter terminating Plaintiff's employment—her failure to properly back up budget files—Plaintiff does not dispute that this conduct could support termination, rather, she only vehemently denies that she engaged in this conduct. She argues only that "a reasonable

jury could find that Laiscell did not fail to properly store and backup her budget documents and, therefore, that this asserted reason is pretextual." Pl. Br. at 30. Plaintiff, however, again mistakes the scope of the Court's inquiry: it is not whether a reasonable jury could find that Plaintiff had not engaged in the conduct she was accused of; rather, the Court's inquiry is limited to whether the Board *believed* that Plaintiff had engaged in that conduct such that it served as the motivation for her termination.

Again, at the third stage of the *McDonnell Douglas* framework in a retaliation claim, the inquiry is focused on the motivation of the employer in taking the adverse employment action. The Court is "decidedly not interested in the truth of the allegations against plaintiff[,]" rather, the Court is "interested in what '*motivated* the employer[;]' the factual validity of the underlying imputation against the employee is not at issue." *McPherson*, 457 F.3d at 216 (quoting *United States Postal Service Bd. of Governors v. Aikens,* 460 U.S. 711, 716 (1983)).

Here, the record overwhelmingly demonstrates that the Board reasonably believed that Plaintiff had improperly failed to properly

24

store budget files. In fact, the Board placed her on administrative leave and engaged an independent firm to conduct an investigation into Plaintiff's conduct even *before* she filed her CHRO complaint, demonstrating that the Board's concerns about her conduct were valid and that its decision to terminate her could not have been motivated by her filing the CHRO complaint. The independent investigation concluded that Plaintiff improperly had stored budget files, thereby reaffirming the Board's good-faith belief that Plaintiff had engaged in this conduct. (JA-265, ¶¶ 9-10; JA-274, ¶¶ 22-25). Plaintiff does not argue that the Board had reason to believe that results of the independent investigation were incorrect. Rather, she offers only that "she swore[]" that her files were properly backed up.[4] Pl. Br. at 27 (citing JA-588); *see also* Pl. Br. at 30 (arguing that the District Court's conclusion was improper because it should have credited her "sworn testimony that she

---

[4] Plaintiff also offers that "it is undisputed that the laptop in question was a work laptop belonging to Appellee, not Laiscell's personal laptop (JA-22 ¶ 65; JA-52 ¶ 65), and so Appellee could have access to it any time it desired." Pl. Br. at 27. This is wholly irrelevant. The Termination Letter is clear that the concern raised by Plaintiff's failure to properly store her files was "how and if the budget files were backed up and protected[.]" (JA-332). Whom the laptop belongs to has nothing to do with whether the files were backed up and protected (i.e. stored somewhere *other* than the laptop).

properly saved and backed up her files[]"). However, Plaintiff's support for this is only her declaration, dated April 24, 2023, and submitted in connection with this litigation, wherein she "swore" that she properly backed up her files. (JA-588, ¶¶ 19-20). The timing of this evidence alone demonstrates its irrelevance: it could not have had *any* bearing on the Board's motivation when it terminated her employment.[5]

This Court has, on several occasions, reiterated that whether an employee actually engaged in the underlying conduct is irrelevant.[6] *See, e.g.*, *Goonewardena v. New York State Workers' Comp. Bd.*, 788 F. App'x 779, 782 (2d Cir. 2019) (holding that the plaintiff's "employer's view of his performance, and not the accuracy of that view, is the proper focus of the pretext injury[]" and that plaintiff's argument that "the district

---

[5] When questioned about her failure to properly back up budget files during the course of the investigation into her conduct, Plaintiff refused to cooperate, and only now claims that she properly maintained files, but provides no evidence to support that assertion. (JA-179; JA-265, ¶¶ 9-10; JA-274, ¶¶ 22-25).

[6] To the extent that Plaintiff asserts or even insinuates that she did not engage in the conduct that the Board determined was worthy of termination—failing to remove her ex-husband from the insurance plan, deleting a sentence from the email, or improperly storing budget files—it bears repeating that each of these allegations of conduct was independently verified by an outside firm, reaffirming that the Board believed, in good faith, that Plaintiff had engaged in the alleged conduct. (JA-264-75).

court should have focused on whether his performance was actually inadequate, rather than how his employers perceived his performance," was "meritless[]"); *Wade v. New York City Dep't of Educ.*, 667 F. App'x 311, 313 (2d Cir. 2016) (holding that plaintiff's "disagreement with the findings of the investigation[]" was "immaterial[]"); *Howell v. Montefiore Med. Ctr.*, 675 F. App'x 74, 75 (2d Cir. 2017) (holding that, even if there was "a triable issue of fact as to what happened[,]" there was no triable issue of fact regarding the employer's motivation and affirming the district court's grant of summary judgment); *Jacobs v. New York City Dep't of Educ.*, 768 F. App'x 86, 88 (2d Cir. 2019) (rejecting plaintiff's contention that the investigative report was "factually incorrect [was] unavailing," given the irrelevance of the truth of the allegations).

This case is no different. Plaintiff has offered no evidence to establish that there is a triable issue of fact with respect to whether the Board was legitimately motivated to terminate her employment based, in part, on the independent investigation's finding that she had failed to properly back up budget files, contributing to its overall conclusion that she had engaged in unprofessional conduct unbecoming of her position. *See, e.g., Fox v. Starbucks Corp.*, No. 21-2531, 2023 WL 407493, at *2

27

(2d Cir. Jan. 26, 2023) ("The undisputed facts show that Fox received a complaint about an alleged violation of [law] at his store, that [the employer] proceeded to investigate his compliance, and that [the employer] decided to terminate [the employee] based on his 'overall work performance, ethics and integrity[.]'").

Ultimately, the District Court properly concluded that "the Board believed [Plaintiff] failed to follow protocol for handling and securing critical public records[,]" and thus that this good-faith belief was a legitimate, non-retaliatory grounds for termination. (SA-28). Plaintiff's failure to establish that there is a triable issue of fact regarding whether the Board believed that she engaged in misconduct is thus fatal to her appeal.

**D.      Plaintiff Has Not Raised a Triable Issue of Fact as to Whether the Board's Citation of Her Altering a Subordinate's Email as an Example of Her Unprofessional Conduct Was Merely Pretext for Retaliation.**

Finally, Plaintiff claims that the "veracity" of the Board's use of Plaintiff altering a subordinate's email as one of the examples of her unprofessional conduct is in question because Plaintiff, as the supervisor, had the "authority to edit [her subordinate's] work

28

product[.]" Pl. Br. at 31. This argument mistakes the proper focus of the inquiry. It is not the degree to which the conduct was permissible or whether she had the authority. Those determinations would have no bearing on the outcome of this case, [7] and do not answer whether she demonstrated a lack of fitness for her executive position from which she was terminated. Again, the Court's inquiry is limited to whether the Board was properly motivated by this conduct when it terminated Plaintiff's employment. *See supra* Section I.C; *McPherson*, 457 F.3d at 216. In fact, this was the stated basis for the District Court's ruling: "The record therefore indicates the Board believed in good faith that Ms. Laiscell committed misconduct." (SA-29).

In an attempt to obfuscate the issue, Plaintiff's argument again misstates the cited reason for her termination. Even if (1) the act of altering a subordinate's work product was generally not proper grounds

---

[7] The District Court appears to have acknowledged this by stating that it "expresses no opinion about the altered e-mail issue." (SA-28). The entirety of the discussion regarding the "e-mail issue" demonstrates that the District Court properly expressed no opinion as to whether the deletion of one sentence of the email was improper conduct; rather, the District Court properly considered the motivations of the Board, concluding that it had a good-faith belief that the conduct warranted Plaintiff's termination. (SA-28-29).

for termination and (2) the veracity of the underlying conduct was relevant to the Court's analysis, Plaintiff's argument would still fail. Although Plaintiff relies heavily on whether a jury could have believed that it was not improper for her to alter her subordinate's work product, she fails to acknowledge that the reason the board found this to be a terminable offense was because the effect of the alteration was "to minimize the importance of the audit." (JA-332). Whether she had the authority to alter the email is hardly dispositive: the Board's concern was that she altered that email to minimize the implications of the Audit and her misconduct. Again, Plaintiff focuses too heavily on the individual examples of her unprofessional conduct without acknowledging that the reason she was terminated was because the circumstances, as a whole, demonstrated that she used the trust vested in her as the Executive Director of Financial Management to minimize her misconduct—a pattern she continues today—and therefore that she was unfit for her executive-level position.

Again, the District Court properly concluded that "[t]he record … indicates the Board believed in good faith that Ms. Laiscell committed misconduct[]" when she altered the email of a subordinate. (SA-29).

30

Plaintiff, who, again, does not dispute that she engaged in this conduct, has failed to offer evidence that any reasonable jury could conclude that the Board was not properly motivated by its concern that Plaintiff's use of her position to minimize the impact of the Audit was an example of misconduct that warranted her termination.

## CONCLUSION

As set forth herein, there is insufficient evidence in the record for a reasonable juror to find that the Board's stated reasons for terminating Plaintiff's employment were pretextual and that retaliation for her CHRO complaint was the but-for cause of the decision. Therefore, the District Court's grant of summary judgment in favor of Defendant should be affirmed.

DEFENDANT-APPELLEE,

HARTFORD BOARD
OF EDUCATION

By: /s/ Peter J. Murphy
     Peter J. Murphy
     Chelsea C. McCallum
     Shipman & Goodwin LLP
     One Constitution Plaza
     Hartford, CT 06103
     Tel.: (860) 251-5000
     Fax: (860) 251-5316
     pmurphy@goodwin.com
     cmccallum@goodwin.com
     Its Attorneys

## CERTIFICATION OF COMPLIANCE

Pursuant to Fed. R. App. P. 32(g)(1), undersigned counsel certifies that:

This brief complies with the type-volume limitations of Fed. R. App. P. 32(a)(7)(B) and Local R. App. P. 32.1(a)(4) because it contains 6,313 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements in Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Office Word in Century Schoolbook 14 point font.

By: /s/ Peter J. Murphy
Peter J. Murphy

## CERTIFICATE OF SERVICE

I hereby certify that on this 23rd day of July, 2024, a true and accurate copy of the foregoing was filed electronically with the Court of Appeals for the Second Circuit via the Court's CM/ECF system. Notice of this filing was sent by email to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

By: /s/ Peter J. Murphy
Peter J. Murphy